130

## AMERICAN PERFIT CRYSTAL CORPORATION v. FUMPSTON, et al.
### No. 68-3399.
Circuit Court, Broward County.

May 19, 1969.

Rogers, Morris & Ziegler, Fort Lauderdale, for petitioner.

McCune, Hiaasen, Crum & Ferris, Fort Lauderdale, for respondents.

## LAMAR WARREN, Circuit Judge.

*Judgment:* This petition for certiorari to review the action of the board of adjustment of the city of Plantation concerns property located at the northeast corner of State Road 7, also known as U. S. Highway 441, and N. W. 6th Court.

After petitioner was denied a building permit to build a service station an appeal was filed seeking a variance. At a public hearing of the board of adjustment the appeal was denied, the effect of which was to uphold a distance requirement between service stations of 1,000 feet.

Although the property is zoned B-3 by the city zoning ordinance, which permits the construction of a service station, under the

ordinance a service station may not be constructed within 1,000 feet of an existing station.

The property was annexed by the city in 1965. At that time four service stations existed within 1,000 feet of another station. No variances have been granted since the passage of the ordinance in 1966.

The above highway has a high traffic count, and runs north and south close to the east boundary of the city. An examination of plaintiff's exhibit 3, an aerial photograph, shows it to be a divided highway, with a grass median strip in the center. At least three lanes of traffic flow north and three lanes south; a drainage ditch is shown close to the east side, or rear, of petitioner's property.

In four consecutive blocks on the east side of the median strip in the area there are service stations on the southwest corners, except the block in which the permit is sought.

It was stipulated that the building permit would have issued except for the distance requirement; that if the property were still in the county the filling station could be built; that the drainage canal reservation (shown on the area map, plaintiff's exhibit 2) is the eastern boundary of the city; and that no objections were filed at the hearing of the board of adjustment.

The evidence of the petitioner, in part, was to the following effect —

A consulting engineer testified that the curb cuts and ramps of the proposed station would allow an easy movement of traffic in and out of the station; that the station would not create a traffic hazard, particularly in view of the median which directs traffic past the station; that stations of this type do not generate traffic, being in the category of necessity and convenience, as opposed to businesses that do generate traffic such as hamburger stands, banks, shopping centers, and others; that the curb cuts were sufficient to protect pedestrians, and they meet state road department criteria; that the residential area east of the property would not be affected more than any by other commercial development; that the median prevents traffic hazards by reducing conflicting movements, as do the six lanes of traffic which would increase the maneuvering ability; that hamburger stands are one of the biggest headaches in urban areas. This is the first time he had testified on distance requirements; the more curb cuts the more pedestrians would have to cross, but he would not call them more street crossings; he did not count the filling stations north and south.

The fire chief of the city of Fort Lauderdale testified that distances commonly used for filling stations were more from a zoning standpoint than from a fire safety standpoint; that modern building requirements do not create a significant fire hazard, tanks being placed underground, fire-proofing being higher than other buildings, pumps having been improved, electrical installations being controlled by codes, larger tanks lessening the amount of delivery traffic; that few fires have occurred in filling stations in Fort Lauderdale in the past five years, which city no longer has a distance requirement; that a restaurant is more of a fire hazard than a filling station.

A real estate appraiser stated that the traffic count in December, 1968, was over 29,000 per 24 hour period in both directions; that the highest and best use for the property was as a service station site, that is, what the property would bring in terms of dollars — from what use a person could get the most money. In this case if the property were developed for some purpose other than a filling station, as for general business, its value would be about $71,000 or $10,000 less. That there would be no adverse effect on the residential area to the east.

A realtor, who was the broker, testified that he determined that the best customers for the property would be oil companies, that they represented the top dollar.

Another appraiser testified that the highest and best use for the property would be as a service station site; that the market value of the property had increased since 1966, this increase being based to some extent on the fact that station sites are limited. He stated that oil companies pay more, and that the highest and best use was the best price as long as it would produce a profit.

A management consultant in fire safety testified that the construction contemplated would not constitute a fire hazard to existing stations or other businesses in the area, or to the residential area east of the site; that the national fire code did not recommend a space between stations, and that other businesses were greater fire hazards than filling stations, such as bowling alleys, restaurants, and others; that it is not dangerous to have stations side by side.

And an insurance agent testified the rate for filling stations was much lower than other ordinary businesses, and that this station would carry a low rate.

For the defendants an administrative assistant to the city council testified that the city adopted the thousand foot distance requirement because it wanted to vary and limit the number of vehicle

movements; that it wanted a free and easy movement of traffic from intersection to intersection without a great number of curb cuts; that a traffic light had been planned; and that no traffic, fire or safety engineer was engaged at the time for advice in planning the distance requirement.

In attacking the zoning ordinance the petitioner had the burden of proving that the zoning restriction was not fairly debatable. City of Boca Raton v. Tradewind Hills, Inc., Fla., 216 So.2d 460; City of St. Petersburg v. Aikin, Fla., 217 So.2d 315.

There was no showing that the existing ordinance was confiscatory in effect, or that the petitioner's property was useless for any purpose other than a filling station site. See citations above.

The zoning classification is fairly debatable.

The request for relief is therefore denied.